# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| TERESA L. TILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:13-CV-181 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Teresa L. Till appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

## I. PROCEDURAL HISTORY

Till applied for SSI and DIB in June 2009, alleging that she became disabled May 9, 2009. (Tr. 189-91, 197-99.) The Commissioner denied Till's application initially and upon reconsideration, and Till requested an administrative hearing. (Tr. 88-95, 98-103.) On April 29, 2011, a hearing was conducted by Administrative Law Judge ("ALJ") John Pope, at which Till, who was represented by counsel; her boyfriend; and a vocational expert ("VE") testified. (Tr. 48-83.) On August 25, 2011, the ALJ rendered an unfavorable decision to Till, concluding that she

---

[1] All parties have consented to the Magistrate Judge. (Docket # 13); *see* 28 U.S.C. § 636(c).

was not disabled because she could perform a significant number of unskilled jobs in the economy. (Tr. 17-30.) The Appeals Council denied Till's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-13, 339-46); 20 C.F.R. §§ 404.981, 416.1481.

Till filed a complaint with this Court on June 5, 2013, seeking relief from the Commissioner's final decision. (Docket # 1.) In this appeal, Till contends that the ALJ improperly evaluated her credibility regarding symptom testimony, and failed to properly evaluate the opinions of her treating psychiatric nurse. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 15-25.) Because Till's first argument is meritorious and warrants remand, the Court need not reach her latter assertion.

## II. FACTUAL BACKGROUND[2]

### A. Background

At the time of her alleged onset date, Till was fifty-three years old (Tr. 189); had a high school education; was certified as a practical nurse (Tr. 54); and possessed work experience as a licensed practical nurse (Tr. 29). She alleges disability due to attention deficit hyperactivity disorder ("ADHD"); depressive disorder, NOS; anxiety disorder, NOS; post-bilateral L5-S1 laminotomies and foraminotomies with a fusion at L5-S1; degenerative changes in the lumbar spine; post-operative changes in the lumbar spine from partial laminectomies and fusion at L5-S1; post-right medial lateral meniscectomy with lateral condyle chondroplasty; cubital tunnel syndrome; and right ulnar neuropathy. (Opening Br. 2.)

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 1320-page administrative record necessary to the decision.

At the hearing, Till testified that she is divorced and currently living in a two-story house with her boyfriend. (Tr. 53.) She previously worked full-time as a licensed practical nurse, but lost her job because she could no longer handle the attendant responsibilities, and was suffering from increased bouts of confusion, anxiety, and forgetfulness (including forgetting to show up for work). (Tr. 55, 67.) After losing her job, Till attended vocational rehabilitation, but had limited success and was unable to find work. (Tr. 56.)

Till testified that she had a spinal fusion in 2005, and was involved in a car accident a year later. *Id.* Due to this accident, Till indicated that she has significant ongoing pain and muscle spasms, which are exacerbated by physical activity. (Tr. 56-57.) Till acknowledged that because she is uninsured, lacks the financial resources, and otherwise disliked the side effects of several of her medications, her treatment has been limited. (Tr. 58-59, 67-68.) For instance, Till's treatment for physical pain and diabetes is limited to hot showers, resting, and going to a free clinic three to four times a year for medication management and checkups. (Tr. 59-60, 67-68.) Till admitted that no doctor has ever placed a limitation on her physical activity. (Tr. 60.)

On a typical day, Till gets out of bed around 2:00 p.m., showers, takes medication, and then sits down to rest. (Tr. 62.) She then walks about her house, stopping to sit or lie down when she starts to hurt. (Tr. 62-63.) At around 7:00 p.m., she makes dinner, eats, and tries to clean up. (Tr. 64.) At 9:30 p.m. she sits down to rest, going to sleep between 12:30 a.m. and 2:00 a.m. *Id.* Till reports that she has problems sleeping because of pain and racing thoughts. (Tr. 64-65.)

Till testified that although she can dress herself, grooming and bathing are painful. (Tr. 65.) And although she shops for groceries, she usually does so with the assistance of a motorized cart. *Id.* She is able to do a little laundry, but has difficulty sweeping or vacuuming,

and has to stay in bed for a day after doing so. (Tr. 65-66.) Till indicated that she does try to exercise daily, walking about an hour with the assistance of a cane. (Tr. 66.)

In terms of social interaction, Till speaks with her son by telephone once every couple of weeks, shares a house with her boyfriend, and maintains a couple of friends from her days as a nurse, but she rarely sees or interacts with them. (Tr. 69.) She also indicated that she has difficulty getting along with people in public arenas. (Tr. 70.)

Till's boyfriend also testified, essentially corroborating Till's testimony on her daily activities and symptoms. (Tr. 76.) Of importance to this appeal, Till's boyfriend explained that although they try to socialize with another couple once a week, there are times where Till does not participate because she does not feel like socializing. (Tr. 77.)

### B. *Summary of the Medical Evidence*

In 2002, Till was diagnosed with ADHD, which had been present since childhood, but had remained undiagnosed. (Tr. 347.) In October 2005, she underwent bilateral L5-S1 laminotomies and foraminotomies, and had a posterolateral interbody fusion, L5 to S1. (Tr. 358-59.) In October 2006, Till was involved in a car accident, and was admitted to the emergency room with complaints of left chest pain; her diagnosis was status post motor vehicle crash, with blunt left thoracic injury and minor closed injury. (Tr. 362-63.) Dr. Jody Neer diagnosed Till with postconcussive syndrome with typical headache and cognitive impairment. (Tr. 416.)

In December 2006, Dr. Frances Goff conducted a neuropsychological evaluation. (Tr. 487.) Till reported memory loss, lack of focus, word retrieval deficits, tearfulness, misinterpretation of others, anxiety, irritability, emotional liability, and depression. (Tr. 488.) Dr. Goff noted that while Till's speech pattern was slurred or dysarthric during the initial

4

consultation, her speech pattern was normal during follow-up. *Id.* Dr. Goff opined that Till's distracted thought process was possibly related to her history of Adult Attention Deficit Disorder. *Id.* In February 2007, Dr. Neer saw Till on follow-up, finding that her post-concussive syndrome was markedly improved, and that an MRI of the brain and EEG were both normal. (Tr. 408.)

Two months later, Dr. William Berghoff evaluated Till due to ongoing left knee pain stemming from her car accident. (Tr. 577-78.) An MRI the following month revealed an arthroscopically detectable tear involving the posterior horn of the lateral meniscus, and an associated small joint effusion. (Tr. 469.) That August, Dr. Berghoff performed a medial lateral meniscectomy with lateral condyle chondroplasty. (Tr. 595.)

In February 2009, Till was evaluated by Ms. Sharon Altholz at Park Center. (Tr. 915-22.) Till reported problems with attention, focus, and concentration; difficulty with appetite and sleep pattern; overall general pain; significant memory loss; continued speech problems; and difficulty getting along with others. (Tr. 915-17.) Ms. Altholz reported that Till worried excessively, was overactive and distracted, suffered from a depressed and anxious affect, and found that although her thinking form was normal, her thought content was helpless, hopeless, and worthless. (Tr. 917.) Ms. Altholz also noted that Till had good basic hygiene, and no problems with cooking or cleaning. (Tr. 919.) Finally, although Till was unable to manage her time appropriately or maintain her schedule, she was capable of independent living. *Id.* Till was diagnosed with depressive disorder, NOS; ADHD, predominantly inattentive type; anxiety disorder, NOS; alcohol abuse, in full remission, and assigned a Global Assessment Function ("GAF") of 52.[3] (Tr.

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-

920-21.)

In April 2009, Till saw Nurse Karen Lothamer at the Park Center for an insight diagnostic evaluation. (Tr. 938.) Till reported problems with depression, mood fluctuation, agitation, memory impairment, and symptoms of inattention. *Id.* On mental status examination, she was overactive, distractible, depressed, and anxious; had helpless and worthless thought content; and had problems with memory; however, she had normal speech and thinking form, and no orientation problems or suicidal thoughts. (Tr. 939.) Till reported that she was currently working part-time as a private duty nurse. (Tr. 941.) She was assigned the same GAF and diagnosis (except her alcohol abuse was not in remission). (Tr. 942.)

From April 2009 to September 2010 Till saw Nurse Lothamer (or occasionally one of her peers) approximately ten times for medication management. (Tr. 938-62, 1108-17, 1200-01, 1232-40, 1246-50, 1300-03, 1311-15). Aside from an insight diagnostic evaluation, which lasted fifty minutes, these meetings typically lasted between fifteen and twenty minutes, and consisted of Till reporting how she felt, and Ms. Lothamer filling out a check-the-box mental functioning assessment. (*See, e.g.*, Tr. 947-51.) Initially, these assessments typically indicated that Till had helpless, hopeless, or worthless thought content; impaired memory; depressed mood; flat affect; and poor judgment. (*See*, *e.g.*, *id.*) Later in her treatment, however, these assessments typically indicated that Till had normal thought content and perception, fair judgment, and no memory problems. (*See, e.g.*, Tr. 1311-15.) Because most of the assessments contain similar information, only the remarkable portions (such as her transition from poor to normal mental health) are highlighted.

---

workers). *Id.*

Likewise, Till also attended individual and group therapy sessions at Park Center with therapist Judith Woodyard (or occasionally one of her peers) from April 2009 to January 2011. (Tr. 963-71, 1084-97, 1118-26, 1202-31, 1241-45, 1251-59, 1306-10.) Although Till missed several appointments, it appears they were scheduled on a monthly basis. These treatment plans and therapy notes follow the same pattern as the mental function assessment; that is, initially Till had bouts of depression and suffered from ADHD, anxiety issues, and had moderate difficulty in social and occupational functioning, but later in treatment was deemed to be showing positive progress. (*Compare* Tr. 963, *with* Tr. 1303.) Accordingly, only the remarkable excerpts from these plans are recounted here.

In August 2009, Dr. Elizabeth Struble performed a consultative examination on behalf of Social Security. (Tr. 1045.) Till reported issues with memory and concentration, and that she had become increasingly emotional and unstable. *Id.* Till indicated that she can dress and feed herself, but can only perform household chores in short intervals and cannot mow the grass. (Tr. 1046.) On physical examination, Till's spine was tender to palpitation, but her gait and strength were normal, as was her range of motion in the cervical and lumber spine and knees. (Tr. 1048.) On neurological examination, Till was alert and oriented times three with good personal hygiene; although she had some flight of ideas, she could follow simple directions and had normal mood and affect. *Id.* Dr. Struble concluded that Till had no limitations in sitting, walking, lifting, carrying, seeing, hearing or speaking. (Tr. 1049.)

In September 2009, Dr. B. Whitley, a non-examining state agency doctor, found Till had no physical limitations (Tr. 1052); this opinion was affirmed by Dr. J. Sands in February 2010 (Tr. 1186).

7

Also in September 2009, Ms. Lothamer wrote a letter indicating that Till's diagnoses caused her difficulty in concentrating, understanding directions, staying focused, completing tasks, and finding that these symptoms were exacerbated by the car accident. (Tr. 1050.) Further, she concluded that that Till would be unable to maintain any type of employment. *Id.*

The following month, Wayne Von Bargen, Ph.D., performed a psychological evaluation. (Tr. 1053-55.) Till reiterated her memory and depression problems, but stated that her symptoms had improved. (Tr. 1053-54.) Dr. Von Bargen reported that Till was adequately groomed and cooperative, but often gave rambling, contradictory, and incomplete answers. (Tr. 1053.) He also concluded that Till appeared able to adequately care for herself and perform routine daily activities although she is somewhat unproductive and disorganized. (Tr. 1054-55.) Till was diagnosed with depressive disorder NOS, anxiety disorder NOS, ADHD NOS, rule out cognitive disorder NOS subsequent to head injury, and assigned a GAF of 55. (Tr. 1055.)

That same month, Till reported to Ms. Lothamer that her medications had helped her depression and concentration, but she was still having issues with memory. (Tr. 1108.) On examination, Till was depressed with a flat affect, but had normal and coherent thought content and perception, no memory problems, fair judgment, normal speech, and was oriented times three. (Tr. 1108-09.)

In December 2009, Till saw Dr. Von Bargen at the request of Social Security for administration of the Wechseler Memory Scale. (Tr. 1058.) During testing, Till exhibited no speech problems, was alert, and displayed appropriate gross and fine motor skills. (Tr. 1058.) Till's test scores placed her in the average to superior range; specifically, her ability to recall information immediately following presentation and following a thirty minute delay were both in

the high average range, her ability to sustain attention and concentration fell in the average range. (Tr. 1059.) This was her lowest score and Dr. Von Bargen concluded it reflected a significant relative weakness with respect to immediate and general memory. *Id.*

In December 2009, Stacia Hill, a non-examining state agency psychologist, conducted a Psychiatric Review Technique, finding that Till had mild limitations in restriction of activities of daily living and maintaining social functioning, and moderate difficulty maintaining concentration, persistence or pace. (Tr. 1075.) Dr. Hill also completed a mental residual functional capacity assessment, finding that Till was moderately limited in her ability to understand and remember detailed instructions, and ability to carry out detailed instructions, but was not significantly limited in the other eighteen categories. (Tr. 1079-80.) In January 2010, J. Larsen, a non-examining state agency psychology, affirmed Dr. Hill's opinion. (Tr. 1185.)

In January 2010, Till told Park Center employees that she was no longer having problems with depression, and requested a decreased dosage in medication, which was granted. (Tr. 1201.) In April 2010, Till reported to Ms. Woodyard that she had been partly successful in her job referral services. (Tr. 1244.) Although she had begun the process, her instability inhibited her from following through and attending vocational rehabilitation appointments. *Id.*

In July 2010, Ms. Lothamer completed a form regarding Till's ability to do work-related mental activities. (Tr. 1260.) Ms. Lothamer found that Till's chronic pain, lack of energy and motivation, and difficulties with focusing, concentration, and depression would cause absenteeism. *Id.* She opined that Till would miss more than three days a month due to her mental illness. *Id.* Ms. Lothamer also stated that Till would require a ten to fifteen minute break every two hours due to her mental illness. (Tr. 1261.)

9

Ms. Woodyard completed an identical form the following month. (Tr. 1262.) Ms. Woodyard stated that Till's problems with sleeping, inability to remember appointments, and fear and emotional inability to function in the workplace would cause absenteeism. *Id.* Ms. Woodyard opined that Till could not work full time, and would need extra breaks due to fatigue, restlessness, and distractibility. (Tr. 1263.)

An October 2010 treatment plan indicated that Till was regularly attending scheduled therapy appointments with good interest and participation, and that she was working well with medical services. (Tr. 1306-08.) The plan also indicated, however, that Till needed continued treatment to address her difficulties with anxiety and social functioning. (Tr. 1308.)

In November 2010, Till went to Matthew 25 to go over recent x-ray and lab tests. (Tr. 1292.) While there, Till developed back spasms, got diaphoretic, and was sent to the emergency room. *Id.*

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative

record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See Dixon v.*

---

[4] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

11

*Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### *B. The ALJ's Decision*

On August 25, 2011, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 17-30.) He found at step one that Till had not engaged in substantial gainful activity since her alleged onset date; and at step two, that ADHD; depression; anxiety disorder, NOS; and obesity were severe impairments. (Tr. 19.) At step three, the ALJ determined that Till's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 20-21.)

Before proceeding to step four, the ALJ determined that Till's symptom testimony was not reliable to the extent it was inconsistent with the following RFC: "[T]he claimant has the residual functional capacity to perform medium work . . . except she is limited to unskilled work." (Tr. 21.) At step four, the ALJ concluded that Till is unable to perform any past relevant work. (Tr. 29.) At step five, however, the ALJ concluded that Till could perform a significant number of unskilled, medium jobs within the economy under Medical-Vocational Rule 203.22. (Tr. 30.) Accordingly, Till's claims for DIB and SSI were denied. (Tr. 29-30.)

### *C. The ALJ's Credibility Determination Will Be Remanded*

On appeal, Till argues that the five reasons provided by the ALJ for discounting her

credibility were flawed because the ALJ selectively recounted the testimony at the hearing and the medical evidence. Of Till's various arguments, two have merit, as it is apparent from the record that the ALJ (1) failed to account for Till's limitations in performing her daily activities; and (2) failed to accurately recite Till's level of social activity in a fair and balanced manner. Ultimately, the ALJ's flawed credibility determination constitutes reversible error. *See Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004).

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine*, 360 F.3d at 754 (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

At the same time, the ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. An ALJ may not reject subjective complaints of pain solely because the medical evidence does not fully support them. *Powers*, 207 F.3d at 435.

*1. The ALJ Failed to Consider Till's Limitations in Performing Daily Activities*

In assessing Till's daily activities, the ALJ found that Till's testimony was "not fully credible" because "[d]espite her allegations of back pain, fatigue, and depression, she said she is able to dress, groom, and bathe herself, go grocery shopping, prepare simple meals, do the dishes, laundry, sweep, vacuum, and sew." (Tr. 28.)

In making this credibility assessment the ALJ erred by ignoring Till's numerous qualifications and limitations in performing such household activities. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("An ALJ may not ignore a claimant's limiting qualifications with regard to her daily activities."). For instance, although Till indicated that she is able to groom and bathe herself, she explained that she does so with "a lot of pain" and that she has to "really fight [] to take baths because it hurts so bad to get in and out of the tub and just stand there barefooted in the tub." (Tr. 65.) Moreover, Till explained that she typically shops for groceries in a motorized cart, and even then she avoids doing so when she is in pain. (Tr. 65.) Additionally, she indicated that she tries to avoid any sweeping or vacuuming, and when she does perform these activities she has to spend the next day in bed recovering. (Tr. 65-66.)

The ALJ's mischaracterization of Till's daily activities fails to "build a 'logical bridge' between the evidence and [his] conclusions. *Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) (unpublished); *see Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009); *Wulf v. Astrue*, 09 C 6505, 2011 WL 1642522, at *19 (N.D. Ill. May 2, 2011) (finding that the ALJ's credibility determination was not supported by substantial evidence because he failed to provide "a fair characterization of [claimant's] testimony" concerning daily activities).

The Commissioner attempts to salvage the ALJ's credibility finding, arguing that it was limited to showing that Till's subjective complaints of pain were inconsistent with her range of daily activities. The Commissioner's argument is flawed in several respects. First, it ignores that the ALJ did not consider the limitations and qualifications Till placed on her daily activities. Whatever weight or consideration the ALJ placed on these limitations when assessing Till's credibility is unknown, as the ALJ says nothing about it. Second, and more importantly, the fact that Till is able to perform minimal daily activities does not, as the ALJ suggests, contradict her complaints of pain. *Zurwaski,* 245 F.3d at 887 (finding that plaintiff's activities "are fairly restricted (*e.g.,* washing dishes, helping his children prepare for school, doing laundry, and preparing dinner) and not the sort that necessarily undermines or contradicts a claim of disabling pain"); *Wulf*, 2011 WL 1642522, at *19 (find that claimant's "daily activities are fairly restricted and do not undermine or contradict a claim of disabling pain") (quotation omitted); *Lawson v. Barnhart,* 455 F.Supp.2d 747, 771 (N.D.Ill.2006) (same); *see also Clifford,* 227 F.3d at 872 ("minimal daily activities ... do not establish that a person is capable of engaging in substantial physical activity"). Simply put, Till's minimal daily activities does not contradict her subjective complaints of pains.

Although an ALJ need not consider every piece of evidence, he must represent the record fairly and accurately represent the record regardless of whether it favors his conclusion. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). "Unless the ALJ properly finds [Till's] testimony to be incredible on remand, any such testimony about how [Till] copes with [her] daily activities should be considered in the RFC assessment." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); *see Zurawski*, 245 F.3d at 888 (finding the ALJ's credibility analysis flawed for failing to discuss

evidence favoring claimant); *Zenka v. Astrue*, 904 F. Supp. 2d 884, 896 (N.D. Ill. 2012) (holding that ALJ's credibility determination was flawed because claimant "testified to having a number of limitations in performing the everyday activities the ALJ considered, most of which were ignored by the ALJ").

        2. *The ALJ's Assessment of Till's Social Activity Rests Upon a Skewed Portrayal*

Till next takes issue with the ALJ's assessment of her social activity. The ALJ found the testimonies of Till and her boyfriend inconsistent, observing that "claimant testified that she only socializes once in a great while, but her boyfriend said that they try to get together with another couple once a week." (Tr. 28.)

"Testimonial inconsistencies can indeed form the basis of an adverse credibility finding." *Hamilton v. Colvin*, 525 F. App'x 433, 437 (7th Cir. 2013) (unpublished) (citing SSR 96-7p). Till contends that there is no testimonial inconsistency, however, as the ALJ "cherry-picked" her and her boyfriend's testimony.[5] To explain, in response to a question from the ALJ about her social activity, Till stated that she maintains some friends from nursing, but only sees them "[o]nce in a great while" because she has difficulty interacting with others. (Tr. 69.) By comparison, Till's boyfriend testified as follows:

    Q:     Okay. Now, what about being out in public, how does she do out in public?

    A:     Well, she seems to be, you know, it depends on the day, but she seems to be able to socialize to a certain point and then she can't do it anymore.

    Q:     Can you give me an example?

---

[5] It should be noted that in the same credibility section the ALJ found Till's boyfriend's testimony "consistent with her allegations." (Tr. 28.) This is at odds, however, with his statement that Till and her boyfriend had inconsistent testimony regarding her social activity. On remand, the ALJ should reconcile his conflicting statements, and consider the entirety of any testimony concerning Till's socialization when determining whether any inconsistencies exist.

> A: Well, we try to meet with another couple once a week and there are some weeks that we've passed because she's in a lot of pain or she just doesn't feel like socializing.

(Tr. 77.)

As is evident from the testimony quoted above, the ALJ's conclusion that Till's testimony was inconsistent with that of her boyfriend is troublesome as Till and her boyfriend were referring to different groups of people when discussing her social activity. Moreover, Till's boyfriend's testimony described how limited her social activity was, yet it is being proffered by the ALJ for opposite proposition.

The ALJ failed to "address the evidence in a balanced manner," when finding that Till's statement that she only sees her nursing friends "once in a great while" contradicted her boyfriend's statement that they attempt to see another couple once a week. *Moore v. Colvin*, No. 13-2460, --- F.3d ---, 2014 WL 763223, at *6 (7th Cir. Feb. 27, 2014); *Flynn v. Astrue,* 563 F. Supp. 2d 932, 940 (N.D. Ill. 2008) (the ALJ must also "explain why contrary evidence does not persuade"). Furthermore, the ALJ's failure to accurately and completely recite Till's boyfriend's testimony created a skewed portrayal of what was testified to. Consequently, on remand the ALJ must support his credibility findings with accurate and fair recitations of the evidence. *Zurawski*, 245 F.3d at 887 ("Where, as here, the ALJ denies benefits, our cases make it clear that the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion.") (citation and internal quotations omitted).

Admittedly, the ALJ mentioned a few other reasons to discredit Till that have more traction. He thought it suspicious that Till's failed vocational rehabilitation was largely due to her failure to respond to potential job opportunities; noted that Till's psychological issues seem to be

17

treated with medication, which she had stopped taking due to the side effects; and observed that Till's psychological tests revealed average to above-average scores in memory and concentration, which is inconsistent with her alleged memory and concentration problems. (Tr. 28.) Nevertheless, these others reasons do not assuage the Court's concern that the ALJ's flawed credibility determinations appear directly relevant to whether Till has the ability to perform unskilled medium work; work that "usually requires frequent bending-stooping," "flexibility of the knees as well as the torso" and states that "being on one's feet for most of the workday is critical." SSR 83-10

Consequently, the case will be remanded so that the ALJ may reassess the credibility of Till's complaints in accordance with Social Security Ruling 96-7p. *See Brindsi ex rel. Brindsi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) ("In evaluating the credibility of statements supporting a Social Security application, we have noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p.").

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Till and against the Commissioner.

SO ORDERED.

Enter for this 18th day of July 2014.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge